Jessie James JENKINS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 16, 1966.

Rehearing Denied May 5, 1967.

John Y. Brown, Lexington, John Swinford, Cynthiana, for appellant.

Robert Matthews, Atty. Gen., George F. Rabe, Asst. Atty. Gen., Frankfort, for appellee.

HILL, Judge.

This appeal is from a verdict and judgment convicting appellant of arson and fixing his penalty at seven years in the state reformatory.

After relating the facts, we shall discuss the questions raised in appellant's brief in the order presented therein.

On February 17, 1965, at 11:05 p. m., Mrs. Elizabeth Williams and Carl Wilson were in the home of the former when smoke was detected and a fire discovered. A hole had been drilled into the side of the house and gasoline and kerosene poured through the hole and on leaves near the edge of the building. Then it was ignited. The fire was put out with little damage.

One witness testified he saw appellant and his wife riding away from the scene of the fire and in the direction of their home in their automobile.

On the following day the police went to see appellant, who was raking leaves for a neighbor. One of the officers testified he asked appellant if he would answer some questions when he got a break in his work; that appellant consented and came over to the police crusier and got in the back seat; that he, the officer, advised appellant of his right to counsel, not to talk unless he desired to do so, and that any statement he might make could be used against him; that defendant promptly, without use of fear, plying questions, or urging by the police, confessed to drilling the hole in Mrs. Williams' house, pouring the kerosene therein, and igniting it. He stated that he wanted to "get it off his chest"; that he did it for his wife; that his wife wanted to get Mrs. Williams "out of the way" so she could be free to see Carl Wilson, the friend of Mrs. Williams.

Appellant first maintains his confessions introduced in evidence were "involuntary" and should not have been admitted. But he did not deny the statements of the police and county attorney. (He made the same admissions to the county attorney after confessing to the police.) So, the evidence is clear and undenied that the confessions were freely, voluntarily, and intelligently made. Furthermore, the first confession to the police was made before he was arrested or his liberty of movement restrained. He also waived the right to counsel by stating that he did not want to see an attorney. See Carson v. Commonwealth, Ky., 382 S.W.2d 85, certiorari denied, 380 U.S. 938, 85 S.Ct. 949, 13 L.Ed. 2d 825.

Another argument, with some analogy to the subject just discussed, relates to the

failure of the trial court to inquire into the voluntariness of the confession upon the first objection to its admission. KRS 422.-110. Again, there was no objection to hearing evidence on voluntariness in the presence of the jury, although we hasten to point out that a specific motion for a hearing out of the presence of the jury is not in all cases necessary. However, in Harris v. Commonwealth, 301 Ky. 818, 193 S.W.2d 466, it is written:

"The amendment provides that such determination shall be made 'Independent of and without the hearing of the jury trying the case.' If, however, the investigation was had in the presence of the jury, and it was clearly shown that the section had not been violated in obtaining the confession, and was, therefore, held to be competent, then no possible prejudice could result from its admission * * *. On the contrary, if the court had heard the testimony concerning the relevancy and competency of the confession in the presence of the jury, and had then rejected the confession, the object and purpose of the statute would be glaringly violated and would no doubt constitute grounds for reversal."

█ It is concluded the rights of appellant have not been prejudiced by the failure of the trial court to hear the question of voluntariness out of the presence of the jury.

█ Appellant complains of the introduction of evidence of another crime. There was some evidence appellant tampered with the gas cutoff valve of Mrs. Williams' home some three or four weeks before the attempted arson. He now contends this evidence was incompetent and prejudicial. KRS 433.010 requires proof that the act must be wilful and malicious. Certainly, evidence that he attempted to "gas" Mrs. Williams a short time before the attempted arson furnishes some evidence of motive and malice and whether

his present crime of arson was done wilfully.

Finally, appellant attacks the instructions (1) for failure to instruct the jury on the the offense of attempted arson, and (2) for failure to instruct on the defense of insanity.

Arson is defined by the statute as: "Any person who wilfully and maliciously sets fire to, burns, or causes to be burned * * * any dwelling house * * *."

The indictment charged, "Jessie James Jenkins committed the crime of arson by wilfully and maliciously setting fire to and causing to be burned the house and residence of Elizabeth Williams * * *." The house "burned," although not to the ground. The fire was extinguished with no great damage.

█ There was no necessity for an instruction on "attempted" arson.

Did the trial court err in refusing to instruct the jury on the question of appellant's claimed insanity? The only evidence concerning appellant's claimed insanity is that "he retired from the railroad two years" before due to nervousness and "spent eight weeks in the hospital" after the commission of the crime with which he is charged here. Appellant also contends in his brief that: "Besides no one in his right mind would try to eliminate his wife's competition for a boyfriend as the Commonwealth contends."

█ It must be conceded the conduct of appellant was strange, unnatural, and contrary to the instincts of every living animal that walks upon this earth—with the exception of man. It must be recognized also that among the millions of men inhabiting this earth, a few may pander every evil wish and whim of their mate. But, this alone does not amount to insanity as we use the word in determining criminal intent. True, there was evidence

appellant "gets mad" and "flies off the handle" and "runs out of the house"; but the evidence shows that he "always has" been guilty of this behavior. That he is nervous and "shakes when he gets pinned down," does not constitute sufficient evidence of insanity as to require an instruction thereon. We conclude there was not sufficient evidence of insanity to demand the giving of an instruction thereon. See McDaniel v. Commonwealth, 277 Ky. 824, 172 S.W.2d 866, and Corder v. Commonwealth, Ky., 278 S.W.2d 77.

The judgment is affirmed.